Van Fossan,
concurring: Whatever may have been in the minds of the parties who initiated the correspondence with Commissioner Roper, a reading of the Roper letter does not convince one that that official intended to make a final and conclusive determination of value. Had he intended to give his letter such force and sanction as petitioners ask for it, it would seem but reasonable that he would have employed language that was clearly and unequivocally final in character and calculated to be impossible of misinterpretation. Instead he used language that evinced the tentative character of the valuation. He stated that the department was “disposed to regard $9,489.34 as a fair valuation of the stock.” Though certain other expressions in the letter are susceptible of a contrary interpretation and lend some vigor to petitioner’s contention the fact remains that *1174 in the most crucial phrase of the entire letter the writer chose an expression which does not support a claim of intended finality of action. Placing, as I do, this construction on the Roper letter, the cornerstone of the argument based thereon is effectually removed and the entire structure is correspondingly weakened.
Viewed in the light of later events, the parties addressing the Commissioner were attempting to shift to him a burden placed upon them by the law, i. e., the duty of making the original determination of value and computation of profit essential to the preparation of their tax returns. That millions of dollars in taxes were involved was immaterial, nor did the fact that a great business transaction was said to depend on the Commissioner’s action give the parties any higher rights in law than were the due of every taxpayer. If the Commissioner lacked the power to act with finality in advance of the event there was an end of the matter. An attempted exercise of power not possessed is an obvious nullity. On the other hand, assuming the existence of power, if the Commissioner did not intend to act with finality and evidenced his real intention by his letter, there again was an end of the matter. On both grounds my conclusion is against the contention of petitioners. A contrary ruling would mean that a taxing official who, as a courtesy to a taxpayer, rendered him aid in such a situation, would thereby and to that extent effectually tie his official hands and render himself impotent to perform the duties placed on him by the taxing statutes.
The practical consequences of such a condition would be far reaching and fundamental in tax administration. The successful accomplishment of such an effort as was here made would so effectually circumscribe the powers of review vested by law in the Commissioner as to defeat the well considered purpose of the law. I can not believe that such a holding is justified either by the facts in the case or by the applicable law.
Passing to the question of a proper valuation on March 1, 1913, of the Ford stock, we engage ourselves in an undertaking which is at once complex and simple. Complex in the factors and formulae that are presented for consideration and simple in the realization that, in its essence, the determination of value is merely a matter of judgment. Many factors must be weighed, and in this process various theories and formulae may be employed, but in the end the value determined on must comport with sound and well reasoned judgment. It follows that the accuracy of the valuation is directly proportionate to the soundness of the judgment.
I have no desire to repeat or comment upon the many considerations that have led us to find the value indicated by my associate. I wish merely to record the fact that after hearing, pondering and weighing the evidence the conviction is to me inescapable that the fair market *1175 price or value of the stock of the Ford Motor Co. on March 1, 1913, was not less then $10,000 per share. This valuation I deem equally fair and just to the taxpayers and to the Government. It is fully justified by the record and satisfies every reasonable and applicable test of valuation.